UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WARREN SAPP,
Plaintiff,
v. Case No.: ____________

CITY OF TAMPA,
Defendant.
________________________________/

**COMPLAINT**

Plaintiff, WARREN SAPP, by and through undersigned counsel, brings this civil-rights action against Defendant, CITY OF TAMPA, FLORIDA, for retaliation in violation of the First Amendment to the United States Constitution and 42 U.S.C. § 1983, and states:

**INTRODUCTION**

This case concerns the government's extraordinary decision to use its institutional authority to remove a citizen from City Hall during a public City Council meeting merely because City officials deemed his presence objectionable. Plaintiff Warren Sapp entered Tampa City Hall on September 17, 2026 for the lawful purpose of obtaining paperwork. Rather than permit Plaintiff to conduct his business in a public government building, City officials escalated his presence into a governmental confrontation: the City Council meeting was interrupted, the Council chambers were locked, Plaintiff was declared “out of order,” Tampa Police officers were summoned, and Plaintiff was ordered removed from City Hall and trespassed for the day. The First Amendment does not permit a municipality to transform disagreement, irritation, criticism,

anticipated expression, or an unwanted citizen's presence in a public governmental forum into grounds for official retaliation. By invoking municipal authority to exclude Plaintiff from City Hall and interfere with his ability to access and petition his local government, the City crossed a constitutional line.

## PARTIES

1. Plaintiff WARREN SAPP (“Plaintiff” or “Sapp”) is a natural person and citizen of the United States who, at all relevant times, was entitled to the protections secured by the First and Fourteenth Amendments to the United States Constitution.
2. Plaintiff is a former professional football player who played for the Tampa Bay Buccaneers and remains a prominent member of the Tampa Bay community.
3. Defendant CITY OF TAMPA, FLORIDA (“City” or “Defendant”), is a municipal corporation organized under the laws of the State of Florida and located within Hillsborough County, Florida.
4. At all times material to this action, the City acted through its City Council, Council officers, employees, agents, and Tampa Police Department personnel acting under color of state and municipal law.

## JURISDICTION AND VENUE

5. This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

6. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action seeks redress for the deprivation, under color of state law, of rights secured by the Constitution of the United States.
7. This Court is authorized to award declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.
8. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because Defendant resides within this District and because all or substantially all of the events giving rise to Plaintiff's claims occurred in Tampa, Hillsborough County, Florida.
9. The Tampa Division is the appropriate division because the events giving rise to this action occurred within Hillsborough County.

**FACTUAL ALLEGATIONS**

10. On September 17, 2026, the Tampa City Council was conducting a public meeting at Tampa City Hall.
11. City Council meetings are governmental proceedings at which members of the public are permitted to attend, observe, petition their government, and, subject to reasonable procedural rules, participate in public comment.
12. The City itself expressly provides procedures through which members of the public may attend and participate in City Council meetings.
13. On September 17, 2026, Plaintiff entered Tampa City Hall.
14. Plaintiff was present at City Hall for a lawful purpose.
15. Specifically, Plaintiff stated that he was present to obtain paperwork.
16. Plaintiff entered an office located near the City Council chambers.

17. Plaintiff was not arrested upon entering City Hall.

18. Nor was Plaintiff arrested upon entering the nearby office.

19. Nevertheless, Plaintiff's presence prompted an extraordinary response from City officials.

20. During the City Council meeting, Council Chair Alan Clendenin interrupted the governmental proceedings.

21. Chair Clendenin caused or directed the doors to the City Council chambers to be locked.

22. Members of the public attending the City Council meeting were temporarily prevented from freely entering or exiting the chambers.

23. The meeting was thereafter interrupted again.

24. City officials determined that Plaintiff was "out of order" and characterized Plaintiff as having created a "disturbance."

25. Plaintiff was then ordered to leave City Hall.

26. The City requested that Plaintiff be trespassed from the premises for the remainder of the day.

27. Tampa Police Department officers responded to City Hall at the City's request.

28. Those officers were acting under color of state law and pursuant to the request and direction of City officials.

29. Tampa Police officers directed Plaintiff to leave City Hall.

30. According to the City's public account of the incident, Plaintiff initially refused to leave.

31. Plaintiff was nevertheless not arrested.
32. The absence of an arrest is significant.
33. The City possessed ample governmental authority to address actual unlawful conduct if such conduct had occurred.
34. Instead, the City invoked its governmental authority to exclude Plaintiff from a government building and from the vicinity of a public governmental proceeding.
35. The City's own Rules of Procedure provide the Council Chair authority to rule members of the public out of order and, under specified circumstances, to direct their removal from the Council Chamber and City Hall for the remainder of that day's meeting.
36. Accordingly, the exclusion of Plaintiff was not merely an independent, discretionary act undertaken by an individual police officer.
37. It resulted from an official determination made through the City's governmental decision-making structure.
38. Indeed, Tampa Police publicly stated that the "Council found him to be out of order by creating a disturbance and requested him to be trespassed for the day."
39. The exclusion was therefore the direct product of governmental action attributable to the City itself.
40. At all material times, Plaintiff possessed the First Amendment right to speak, petition government, seek information from his government, attend

government proceedings made open to the public, and engage in lawful expressive conduct without suffering retaliation from municipal officials.

41. Plaintiff's lawful presence in City Hall, effort to obtain governmental paperwork, access to government offices, and ability to observe, petition, and interact with his local government implicated rights protected by the First Amendment.

42. Government officials may establish reasonable, viewpoint-neutral rules governing the orderly operation of governmental meetings.

43. They may not, however, employ those rules as a pretext for suppressing, punishing, or deterring constitutionally protected activity.

44. Nor may the City invoke the label "disruptive" as a talisman that automatically defeats First Amendment scrutiny.

45. The Constitution requires more.

46. On information and belief, the decision to exclude Plaintiff was substantially motivated by Plaintiff's protected activity, expressive conduct, anticipated expression, and/or exercise of his right to access and petition his local government.

47. On information and belief, Defendant's characterization of Plaintiff's conduct as a "disturbance" was used to justify an adverse governmental response to conduct protected by the First Amendment.

48. At a minimum, the City used the extraordinary machinery of municipal government—including interruption of a public meeting, locking the Council

chambers, summoning law enforcement, and issuing a governmental exclusion—to punish or deter Plaintiff's exercise of constitutional rights.

49. A reasonable person confronted with police intervention and exclusion from City Hall for attempting to access and interact with local government would be deterred from exercising those rights in the future.

50. Plaintiff himself was subjected to the stigma, humiliation, public scrutiny, and loss of liberty attendant to being publicly removed and excluded from City Hall.

51. The incident immediately generated substantial public attention portraying Plaintiff as having been removed from his local government for supposed misconduct.

52. The City's conduct therefore imposed real and concrete consequences upon Plaintiff.

53. The First Amendment prohibits municipal officials from retaliating against an individual for engaging in protected speech or conduct.

54. The Eleventh Circuit has long held that the government violates the First Amendment when it subjects a person to adverse action because of constitutionally protected expression and when the action would likely deter a person of ordinary firmness from exercising First Amendment rights. *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005).

55. The Supreme Court has likewise made clear, in litigation arising from retaliation by a Florida municipality connected with a city council meeting, that municipal action undertaken pursuant to an official retaliatory policy

may violate the First Amendment. *Lozman v. City of Riviera Beach*, 585 U.S. 87, 96–101 (2018).

56. The constitutional principles governing this case were therefore clearly established long before September 17, 2026.

**MUNICIPAL LIABILITY**

57. Plaintiff realleges paragraphs 1 through 56 as though fully set forth herein.

58. The constitutional deprivation alleged herein was directly attributable to the City of Tampa.

59. Plaintiff does not seek to hold the City liable merely under a theory of respondeat superior.

60. Rather, the adverse action against Plaintiff was ordered, authorized, directed, implemented, and/or ratified through officials exercising governmental authority on behalf of the City.

61. The Tampa City Council has formally adopted Rules of Procedure vesting the Council Chair with authority to maintain order and, under specified circumstances, direct that an individual be removed from the Council Chamber and City Hall.

62. Chair Clendenin was acting pursuant to that delegated governmental authority when he determined that Plaintiff was "out of order" and caused or participated in the governmental response that followed.

63. On information and belief, the request to trespass Plaintiff originated from the City Council and/or officials possessing authority to act for the City

concerning control of the Council meeting and access to City Hall during that meeting.

64. Tampa Police officers thereafter implemented that official determination.

65. The City's own public account confirms that the "Council" made the determination that Plaintiff was out of order and requested that he be trespassed.

66. The resulting deprivation therefore occurred pursuant to an official decision, policy, practice, directive, and/or act of a municipal official possessing final or delegated authority over the subject matter.

67. The City is accordingly subject to liability under 42 U.S.C. § 1983. See *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978).

## COUNT I
## FIRST AMENDMENT RETALIATION
## 42 U.S.C. § 1983 – CITY OF TAMPA

The City of Tampa retaliated against Plaintiff for the exercise of rights protected by the First Amendment by using municipal authority to exclude him from City Hall and interfere with his access to local government.

68. Plaintiff realleges paragraphs 1 through 67 as though fully set forth herein.

69. The First Amendment, applicable to Defendant through the Fourteenth Amendment, protects freedom of speech and the right to petition the government for redress.

70. Plaintiff engaged in activity protected by the First Amendment, including accessing his local government, seeking governmental paperwork and information, engaging in expressive conduct, and exercising or attempting to

exercise his right to observe, interact with, and petition municipal government.

71. Defendant subjected Plaintiff to adverse governmental action.

72. That adverse action included declaring Plaintiff out of order, interrupting governmental proceedings in response to his presence, locking the Council chambers, summoning law enforcement, directing that Plaintiff leave City Hall, and causing Plaintiff to be trespassed from the premises.

73. Such governmental action would deter a person of ordinary firmness from continuing to exercise his First Amendment rights.

74. Defendant's adverse actions were substantially motivated by Plaintiff's exercise of, or attempt to exercise, First Amendment rights.

75. The close temporal and direct causal connection between Plaintiff's presence and activity at City Hall and the City's immediate adverse response further demonstrates causation.

76. Defendant's conduct was intentional, knowing, reckless, and undertaken under color of law.

77. Defendant's conduct deprived Plaintiff of rights secured by the First and Fourteenth Amendments to the United States Constitution.

78. The City's conduct was undertaken pursuant to an official governmental decision, policy, delegated authority, or action attributable to the municipality itself.

79. As a direct and proximate result of Defendant's unconstitutional conduct, Plaintiff suffered injury, including loss of constitutional rights, humiliation,

embarrassment, reputational harm, emotional distress, inconvenience, and other compensable damages.

80. Plaintiff is therefore entitled to recover compensatory damages pursuant to 42 U.S.C. § 1983.

81. Plaintiff is further entitled to nominal damages for the violation of his constitutional rights irrespective of the amount of compensatory damages ultimately proven.

82. Plaintiff is entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff WARREN SAPP respectfully requests that this Court enter judgment in his favor and against Defendant CITY OF TAMPA, FLORIDA, and:

A. Declare that Defendant's retaliation against Plaintiff violated the First and Fourteenth Amendments to the United States Constitution;

B. Award Plaintiff compensatory damages in an amount to be determined by the jury;

C. Award Plaintiff nominal damages for the deprivation of his constitutional rights;

D. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

E. Award pre-judgment and post-judgment interest as permitted by law;

F. Grant such declaratory, injunctive, and other equitable relief as the Court determines appropriate; and

G. Award such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

**Dated**: September 23, 2026

Respectfully submitted,

*/s/ Anthony F. Sabatini*
ANTHONY F. SABATINI
Florida Bar No. 1018163
anthony@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st Ave.
Mount Dora, Florida 32757
Telephone: (352) 455-2928
**Lead Counsel for Plaintiffs'**

*/s/ Gavin B. Rollins*
GAVIN B. ROLLINS, ESQ.
FL BAR No. 1064417
gavin@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st AVENUE
MOUNT DORA, FL 32757
T: (352)-328-4892
**Co-Counsel for Plaintiffs'**

## CERTIFICATE OF SERVICE

I certify that on 9.23.2026 I caused a true and correct copy of the foregoing to be filed via CM/ECF, which will serve all counsel of record.

*/s/ Anthony F. Sabatini*